James H. Juliussen
Davis Wright Tremaine LLP
701 W. 8th Avenue, Suite 800
Anchorage, Alaska 99501
(907) 257-5300

Attorneys for Hope Community Resources, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DAVID EDADES,<br><br>        Plaintiff,<br><br>vs.<br><br>HCR, INC., doing business as HOPE COMMUNITY RESOURCES, and HOPE COTTAGES,<br><br>        Defendant. | Case No. 3:05-CV-00230-(TMB)<br><br>**DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendant Hope Community Resources, Inc. ("Hope") moves for summary judgment against plaintiff David Edades's ("Edades") claims for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA") and for violation of the implied covenant of good faith and fair dealing. Summary judgment is appropriate as to Edades's FLSA claim because Edades was subject to a valid sleep time arrangement under FLSA regulations and was paid for all hours worked pursuant to that agreement. Hope is also entitled to summary judgment as to Edades's claim for retaliatory discharge

in violation of the covenant of good faith and fair dealing because Edades has not engaged in any protected activity and because Hope provided legitimate, non-discriminatory reasons for Edades's discharge which Edades cannot show are pretextual.

## I.  UNDISPUTED FACTS

David Edades was hired by Hope as a Home Alliance Coordinator ("HAC") on or about July 21, 1999, at which time Edades received and signed for Hope's personnel policy manual, which included Hope's sleep time policy. Edades Depo. p.14 ln 16 – p.19 ln 19. Edades admits that he read the policy. *Id.* at p.15 lns 14-20. Pursuant to the policy, Edades was to be paid for sixteen hours of working time during each 24-hour shift. *Id.* at p.17 ln 23 – p.18 ln 9. In the event he was required to provide care that interrupted his scheduled 8-hour sleeping period, Edades was required to fill out an incident report explaining the sleep disturbance. *Id.* at p.20 ln 17 – p.22 ln 1. In the event Edades was unable to get five hours of uninterrupted sleeping time, Edades was entitled to be paid for the entire 24-hour period. *Id.* at p.19 lns 7 – 10. Edades admits he was paid for each hour for which he submitted time sheets reflecting a sleep disturbance, including those periods in which his time sheets reflected 24 hours of working time. *Id.* p.27 ln 22 – p.28 ln 25.

The job description of a HAC provided that one of the essential duties of the position was to coordinate "transportation to meet individuals' needs, including, but not limited to, public transportation, back up van driving duties, and accompanying individuals to work, activities etc." Affidavit of Kathy Proulx-Hendrickson (hereinafter

MOTION FOR SUMMARY JUDGMENT -- 2
91076v1  23564-60

"Proulx-Hendrickson Aff."), para. 2 and Exhibit A thereto. Edades agreed that each of the duties listed on the description was one of his responsibilities in that position. Edades Depo. p.38 ln 15 – p.39 lns 6.

Nevertheless, Edades complained to his supervisors when they requested he provide transportation to clients because he believed that this description referred only to the HAC's duty to transport clients to doctor's appointments and other "important activities," and not out into the community. *Id.* at p.43 ln 1 – p.44 ln 11. Edades believed that it was improper for him to provide such transportation based on his mistaken understanding that Hope received separate public funding for a specific position to perform those duties. Proulx-Hendrickson Aff., para. 5.

In short, Edades's understanding of the funding for a separate "day habilitation" position is simply incorrect. Although Hope at one time provided day habilitation services through a separate department, Hope stopped doing so three or four years ago. *Id.* The primary purpose of day habilitation services is to facilitate and strengthen a client's integration into the community. *Id.* Hope bills the State of Alaska for all approved day habilitation services if and when such services are provided. *Id.* There is no requirement that the services be provided by a "specialist." *Id.* Instead, day habilitation services can be provided by any Hope employee who is familiar with the particular needs and interests of the client. *Id.*

On August 16, 2004, Edades was placed on a work improvement program which detailed noted deficiencies in Edades's performance, including failure to maintain the

MOTION FOR SUMMARY JUDGMENT -- 3
91076v1 23564-60

cleanliness of the house and deficient communication skills. *Id.* at para. 3 and Exhibit B thereto. Edades signed the work improvement program, which expressly stated that if "performance progress is judged not to be adequate, additional disciplinary action up to and including termination may be taken[.]" *Id.*

On August 25, 2004, Edades was suspended for an incident in which he left a client in the care of his wife, who was not scheduled or authorized to work in the home, while he went to the store. *Id.* at para. 4 and Exhibit C thereto. On September 1, 2004, on-call staff discovered unreported medication errors, and Edades admitted that he had placed missed medications in a plastic pouch. *Id.* Twelve bottles of medication and loose unaccounted for medication were found unsecured in the kitchen cabinets in violation of Hope policy. *Id.* Also on September 1, rodent feces was discovered in drawers, HAC living quarters, and on floors in the home at which Edades acted as HAC. *Id.* Edades admitted he knew about the rodents. *Id.* Edades was terminated for these performance errors on or about September 3, 2004. *Id.*

II. ANALYSIS

A. **Hope is Entitled to Judgment as a Matter of Law as to Edades's Claim for Overtime Compensation Under the FLSA.**

Summary judgment is appropriate with respect to Edades's claim for overtime compensation under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), because there is no genuine issue of material fact that Edades was subject to a valid sleeping time agreement and that he was paid for all hours worked in accordance with that agreement.

MOTION FOR SUMMARY JUDGMENT -- 4
91076v1 23564-60

Edades's sleeping time arrangement is properly analyzed under 29 CFR §785.23, which provides:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted[.]

Section 31b20 of the Department of Labor Field Operations Handbook provides that the "extended period of time" requirement of 29 CFR § 785.23 may be satisfied by an employee who resides at the employer's premises for 120 hours or more in a week, or who is on duty for five or more consecutive days or nights. Section 31d01 provides that fulltime houseparents of community residences for those in need of custodial care are considered to be "residing on the premises" if they meet the standards set forth in Section 31b20, even if they "have regularly scheduled off-duty periods (for which they are not paid) which might ordinarily break a continuous tour of duty of 24 hours or more."

Under Alaska law, employee handbooks may create employment agreements, even if they include disclaimers expressly indicating they do not constitute employment contracts. *See Jones v. Central Peninsula General Hospital*, 779 P.2d 783, 786 (Alaska 1989). Unilaterally drafted sleeping time arrangements satisfy the FLSA because they simply "serve[] the purpose of giving the employees advance notice of the circumstances under which their sleep time [will] be compensated." *Bouchard v. Regional Governing*

MOTION FOR SUMMARY JUDGMENT -- 5
91076v1  23564-60

*Board of Region V Mental Retardation Services,* 939 F.2d 1323, 1329 (8th Cir. 1991) (court rejected argument that unilaterally drafted sleeping time policy was improperly forced upon employees). *See also Shannon v. Pleasant Valley Community Living,* 82 F.Supp.2d 426, 431 (W.D.Pa. 2000) (sleeping time policy set forth in employee manual that expressly provided that its contents did not create an employment contract nonetheless satisfied the FLSA where the employees signed off on receipt of manuals prior to commencement of work and did not lodge any formal complaint or refuse to accept paychecks reflecting nonpayment for sleeping time).

Even assuming Hope's policy manual did not create an express sleeping time agreement between Hope and Edades's, such an agreement may be implied by Edades's failure to object to Hope's withholding of sleeping time pay while continuing to work for Hope. *See Braziel v. Tobosa Developmental Services,* 166 F.3d 1061, 1062-63 (10th Cir. 1999) (where employer did not discuss sleeping time arrangements with employees, but employees clearly understood policy not to pay for sleeping time except in certain circumstances, and employees did not file grievances or otherwise complain about the policy, an implied agreement to exclude sleeping time hours from compensation existed). *See also Ariens v. Olin Mathieson Chemical Corporation,* 382 F.2d 192 (6th Cir. 1967) (a valid implied agreement to exclude sleeping time existed where employees were given a pamphlet explaining the work schedule and continued to receive paychecks that reflected no payment for sleeping time without objection); *Trocheck v. Pellin Emergency Medical Service, Inc.,* 61 F.Supp.2d 685 (N.D. Ohio 1999) (implied agreement existed where

MOTION FOR SUMMARY JUDGMENT -- 6
91076v1  23564-60

employee did not complain after being explained employer's policy not to compensate for sleeping time, and continued to receive paychecks, because employee "understood and acquiesced" to policy); *Beaston v. Scotland School for Veterans*, 693 F.Supp. 234 (M.D.Pa. 1999), *aff'd,* 869 F.2d 587 (3d Cir. 1989) (plaintiffs who testified that they "had a clear understanding that they would not be paid for sleeping" when they began working, and continued employment, impliedly agreed that sleep time did not constitute work time).

Because Edades admits that he was paid for every hour he worked in accordance with Hope's sleeping time policy, which he acknowledged he read and understood, there is no genuine issue of material fact with respect to Edades's claim for overtime compensation under the FLSA, and Hope is entitled to judgment as a matter of law.[1]

**B.    Hope is Entitled to Judgment as a Matter of Law as to Edades's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Edades also claims that he was terminated for complaining about the job duties assigned to him in violation of the covenant of good faith and fair dealing. Specifically, he alleges that he complained about being directed to chauffer clients to non-medical appointments because he believed that Hope had received federal funding to hire and retain an individual whose job was to provide such rehabilitation transportation to Hope's clients. Edades Depo. p. 42 lns 4 – p. 45 ln 25. Edades claims that the reasons given for

---

[1] It appears Edades believes that he is entitled to be paid for 24 hours based on his understanding that Hope charged its clients for 24-hour a day care. Edades Depo. p. 30 lns 4-16. However, Edades cites no support for this theory, and since he admits that he was paid for every hour in which he actually provided care, the argument has no merit. *Id.* at p.30 lns 17-25.

MOTION FOR SUMMARY JUDGMENT -- 7
91076v1  23564-60

his termination were pretextual, and that the real reason for his termination was retaliation for his complaints about being required to transport clients for non-medical rehabilitation purposes.

To establish a prima facie case of retaliatory discharge as a breach of the implied covenant of good faith and fair dealing, the plaintiff must show: (1) the employee was engaged in a protected activity; (2) an adverse employment decision was made; and (3) there is a causal connection between the first two elements. *Lincoln v. Interior Regional Housing Authority*, 30 P.3d 582, 586 (Alaska 2001); *Kinzel v. Discovery Drilling, Inc.*, 93 P.3d 427 (Alaska 2004). The covenant of good faith and fair dealing cannot create new rights or alter the rights between the parties, and the covenant cannot be read to prohibit what is expressly permitted in the underlying contract. *Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1141 (Alaska 1999) (*citing Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997).

1. <u>Edades Was Not Engaged in a Protected Activity</u>.

Edades cannot state a claim for breach of the covenant because he was not engaged in a protected activity when he complained about having to transport clients for rehabilitation purposes. First, Edades's job description, which he admitted accurately described his duties, provided that an essential function of the position was to transport clients to "work, activities etc." Proulx-Hendrickson Aff., para. 2 and Exhibit A thereto. Further, each time Edades complained about his transportation, or "day habilitation" duties, which complaints occurred over a period of years, he was informed of his

MOTION FOR SUMMARY JUDGMENT -- 8
91076v1  23564-60

mistaken beliefs and told yet again that transporting clients around the community was a function of his position. *Id.* at para. 5. In this context, Edades's objections reflected nothing more than a continued reluctance to perform the duties of his position. Put another way, complaining about the tasks he was required to perform was not a protected activity, and the covenant of good faith and fair dealing did not prevent Hope from terminating Edades for refusing to perform his job duties.

Further, Edades is simply incorrect in believing that Hope received public funding for a separate rehabilitation position. Although Hope at one time provided day habilitation services through a separate department, Hope stopped doing so three or four years ago. *Id.* The primary purpose of day habilitation services is to facilitate and strengthen a client's integration into the community. *Id.* Hope bills the State of Alaska for all approved day habilitation services if and when such services are provided. *Id.* There is no requirement that the services be provided by a "specialist." *Id.* Instead, day habilitation services can be provided by any Hope employee who is familiar with the particular needs and interests of the client. *Id.*

In summary, Edades's complaints were without substance or merit. Under these circumstances, even if Hope had terminated Edades because of his complaints (which Hope expressly denies), this would not be a breach of the covenant of good faith and fair dealing, because Edades's complaints were not protected activities.

2. <u>Hope Provided Legitimate, Non-Discriminatory Reasons For Edades's Termination.</u>

MOTION FOR SUMMARY JUDGMENT -- 9
91076v1  23564-60

Even if Edades could make out a prima facie retaliation case, his claim fails because Hope has set forth legitimate, nonretaliatory reasons for his discharge, and Edades cannot show that those reasons were pretextual.[2] *Kinzel*, 93 P.3d at 433. Under a pretext analysis, the burden then shifts to Edades to show that the reasons given by Hope for his termination were untrue, <u>and</u> that the real reason for his termination was unlawful retaliation. *VECO, Inc. v. Rosebrock*, 970 P.2d 906, 919-20 (Alaska 1999); *St. Mary's Honor Center v. Hicks*, 509 US 502, 514-18 (1993).

The facts surrounding Edades's termination are not in dispute. Edades was terminated on or about September 4, 2004, after numerous performance issues. Proulx-Hendrickson Aff., para. 4 and Exhibit C thereto. Edades's termination followed his placement on a 30-day work improvement program for issues on August 16, 2004. *Id.* at para. 3 and Exhibit B thereto. Then, on August 25, 2004, Edades was suspended for an incident in which he left a client in the care of his wife, who was not scheduled or authorized to work in the home, while he went to the store. *Id.* at para. 4 and Exhibit C thereto. On September 1, 2004, on-call staff discovered Edades had made medication errors, left medication unsecured, and rodent feces were discovered throughout the home at which Edades acted as HAC. *Id.* Edades was terminated for these performance errors on or about September 3, 2004. *Id.*

---

[2] Because Edades has provided no direct evidence of retaliation, he is not entitled to present a mixed motive retaliation claim. *Kinzel*, 93 P.3d at 434.

MOTION FOR SUMMARY JUDGMENT -- 10
91076v1  23564-60

Even if Edades does not believe the reasons Hope gave for his termination were legitimate, he has presented absolutely no evidence to suggest that the real reason for his termination was unlawful retaliation. Because Hope has set forth legitimate, non-discriminatory reasons for Edades's termination, and Edades cannot show that these reasons were pretextual, Hope is entitled to judgment as a matter of law as to Edades's claim for retaliatory discharge in violation of the covenant of good faith and fair dealing.

### III.  CONCLUSION

Edades cannot state a claim for overtime compensation under the FLSA because he was subject to a valid sleeping time agreement and he admits he was paid for all hours worked in accordance with that agreement. Edades cannot state a claim for breach of the implied covenant of good faith and fair dealing because he has not shown he was engaged in a protected activity or that the legitimate reasons given for his termination were pretextual. For the foregoing reasons, Hope respectfully requests that the court grant its motion for summary judgment in its entirety.

MOTION FOR SUMMARY JUDGMENT -- 11
91076v1  23564-60

DATED this 30th day of June, 2006.

        DAVIS WRIGHT TREMAINE LLP
Attorneys for Hope Community Resources, Inc.

By:   /s/ James H. Juliussen
       701 W 8th Avenue, Suite 800
       Anchorage, Alaska 99501
       Phone: (907) 257-5300
       Fax: (907) 257-5399
       jimjuliussen@dwt.com
       ABA: 9211082

Certificate of Service

I certify that on the 30th day of June, 2006, a true and correct copy of the foregoing document was served electronically on the following:

    Joseph P. Josephson

    /s/ Kris Hamann

MOTION FOR SUMMARY JUDGMENT -- 12
91076v1  23564-60