James H. Juliussen
Davis Wright Tremaine LLP
701 W. 8th Avenue, Suite 800
Anchorage, Alaska 99501
(907) 257-5300

Attorneys for Hope Community Resources, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DAVID EDADES, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>HCR, INC., doing business as HOPE )<br>COMMUNITY RESOURCES, and )<br>HOPE COTTAGES, )<br>)<br>Defendant. )<br>_____ ) | Case No. 3:05-CV-00230-(TMB)<br><br>**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

INTRODUCTION

Supported with nothing more than an inadmissible third-party affidavit, Plaintiff David Edades's ("Edades") Opposition to Defendant's Motion and Memorandum in Support of Motion for Summary Judgment fails to raise any genuine issue of material fact that Defendant Hope Community Resources ("Hope") is liable for violations of the Fair Labor Standards Act or for retaliation in violation of the implied covenant of good faith and fair dealing. Hope's sleep time policy is expressly permitted under FLSA

regulations, and Edades was aware of and agreed to that policy prior to beginning his employment. Further, because Edades did not engage in any protected activity and his termination was based on identifiable performance errors, Hope is not liable for retaliation. Hope is entitled to summary judgment as a matter of law as to both claims.

ARGUMENT

A.  **There is No Admissible Evidence to Support Edades's Opposition.**

Federal R. Civ. P. 56(e) provides that affidavits opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." In addition, hearsay may not be relied upon to defeat summary judgment. *Kim v. United States*, 121 F.3d 1269, 1277 (9th Cir. 1997) (affidavit not based on personal knowledge properly rejected on summary judgment motion); *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir.1996); *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 345 n. 4 (9th Cir.1995) (inadmissible hearsay cannot be used to defeat summary judgment). The Affidavit of Domie Edades attached to plaintiff's opposition memorandum fails to satisfy Federal R. Civ. P. 56(e) because it does not set forth a basis or lay any foundation for Domie Edades's personal knowledge of the facts asserted in the affidavit and is replete with hearsay statements that are not admissible in

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 2 of 13
94744v1  23564-60

evidence.[1] Hope objects to, and moves to strike, Domie Edades's affidavit on the basis of lack of foundation and hearsay.

Moreover, not one of the documents attached to plaintiff's opposition as Exhibits 1 - 8 has been properly authenticated, and plaintiff lays no foundation for their consideration as evidence in opposition to Hope's motion for summary judgment. Courts have "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of America, NT & SA,* 285 F.3d 764, 772 (9th Cir. 2002). This flows from the fact that a party opposing a summary judgment motion must come forth with evidence that would be admissible at trial showing that there are material issues of fact precluding summary judgment. *Id.* at 773 ("[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment"). Because Exhibits 1 - 8 attached to Edades's opposition memorandum have not been authenticated, they cannot be considered for purposes of summary judgment. Thus, with the exception of Edades' deposition, Edades failed to provide testimonial or documentary evidence of any kind to support his opposition. Absent the existence of any admissible evidence from Edades, the only evidence before the court supports Hope's motion for summary judgment.

---

[1] For instance, Domie Edades provides no foundation for her personal knowledge of the Plan of Care for the men in the Ticonderoga home, the contents of the work improvement program for David Edades, or David Edades's medication storage practices. Further, the affidavit makes continual allegations of fact based on nothing more than hearsay references to communications David had with herself and with others.

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 3 of 13
94744v1  23564-60

B.  **Hope and Edades's Sleep Time Agreement is Permissible Under the FLSA.**

Edades's citation of 29 CFR § 785.17, relating to compensation for on call time, does nothing to change the rule set forth in 29 CFR § 785.23, which permits precisely the type of sleeping time agreement entered into between Hope and Edades. Under 29 CFR § 785.23, and as explained more fully in Hope's opening summary judgment motion, "[a]n employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises."

Nothing in 29 CFR 785.23 requires an agreement between an employer and employee to be subject to some undefined "negotiation process," as alleged by Edades. Regardless of the fact that the agreement was drafted by Hope, Edades admittedly read and signed his agreement to the policy prior to the commencement of his employment. Edades Depo. p.14 ln 16 – p.19 ln 19. To suggest now that the agreement is not enforceable because Edades did not participate in its drafting is ridiculous. In case after case, courts have held that employer-drafted sleep time policies satisfy the FLSA, without any requirement that the employer bargain with the employee over their terms.[2]

While Section 31b18b of the Department of Labor Field Operations Handbook does appear to require that the agreement "not be a unilateral decision of the employer,"

---

[2] See, e.g., *Braziel v. Tobosa Developmental Services*, 166 F.3d 1061, 1062-63 (10th Cir. 1999); *Bouchard v. Region V Mental Retardation Services*, 939 F.2d 1323, 1329 (8th Cir. 1991); *Beaston v. Scotland School for Veterans*, 693 F.Supp. 234 (M.D. Pa. 1988), aff'd, 869 F.2d 587 (3d. Cir. 1989); *Shannon v. Pleasant Valley Community Living*, 82 F.Supp.2d 426, 431 (W.D. Pa. 2000); *Blackburn v. Kansas Elks Training Center for the Handicapped, Inc.*, 40 F.Supp.2d 1270, 1274 (D.Kan. 1999); *Trocheck v. Pellin Emergency Medical Service, Inc.*, 61 F.Supp.2d 685 (N.D. Ohio 1999).

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 4 of 13
94744v1  23564-60

that is not the situation before the court in this case. Edades was presented with the agreement prior to beginning his employment and had the right to decide whether to sign it as is or attempt to negotiate over it. He chose to sign the agreement and commence employment with Hope. This is not a circumstance where the employee was hired, began work, and was then confronted with the policy midway through his employment, with the threat of termination if he refused to agree. Instead, the sleep time policy was in place prior to the commencement of Edades's employment, and Edades admits he read and understood the policy and signed the agreement of his own volition.

Edades cites *Johnson v. City of Columbia*, 949 F.2d 127 (4th Cir. 1991), to support his argument that Hope's sleep time policy was unlawfully unilaterally imposed by Hope. However, *Johnson* was decided under a completely different federal regulation applicable exclusively to firemen and other emergency workers, 29 CFR §553.223. In addition, the circumstances of *Johnson* are very different from those presented here. In *Johnson*, the employer changed the terms of Johnson's compensation for sleep time *after* the commencement of his employment, and when Johnson protested the change, he was told he must sign the agreement or be terminated. *Id.* at 131. Interestingly, the *Johnson* court noted that where an employee fails to protest a policy and continues to work and receive paychecks, an implied agreement arises to exclude sleeping time from compensation, but that this rule would not apply where an employer coerces an employee to accept the new agreement through a threat of termination. *Id.* at 131-32.

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 5 of 13
94744v1  23564-60

Similarly, *Hultgren v. County of Lancaster*, 913 F.2d 498 (8th Cir. 199), also cited by Edades, involved employment agreements reflecting a change in the employer's existing sleep time policies that were presented to current employees on a take-it-or-leave-it basis. *Id.* at 506. In *Hultgren*, the court's determination that the employer violated the FLSA was based not only on the new agreements, but also on the fact that the employer failed to provide sleeping facilities in a home-like environment and failed to properly compensate the employees for interruptions in sleep time as required by 29 CFR § 785.22.[3] There is no suggestion that Edades was coerced into signing the handbook containing the sleep time agreement, and the *Johnson* and *Hultgren* cases are inapposite to the facts before the court here.

Citing to the affidavit of Domie Edades, Edades finally makes an attempt to argue that he did complain about Hope's sleep time policies. However, Domie Edades's affidavit provides no foundation for the basis of her knowledge of any complaints made by David Edades to Hope, and her statements are inadmissible hearsay. Even if admissible evidence supported the claim that Edades complained about Hope's sleep time policy, however, such complaints alone would be insufficient to overcome the reasonable agreement between Hope and Edades. *See Braziel*, 166 F.3d at 1062 (Employer's sleep time arrangement with employees did not violate FLSA even though employees

---

[3] In the later 8th Circuit *Bouchard* case, 939 F.2d at 1329, the court, while not expressly overruling *Johnson*, specifically held that an agreement unilaterally drafted by the employer to exclude sleep time from compensation satisfied the FLSA. *Id.* at 1330-31.

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 6 of 13
94744v1  23564-60

complained to supervisors about the policy, where employees were aware of and understood the policy prior to commencement of employment).

Because Hope properly compensated Edades in accordance with the valid sleep time agreement between the parties, there is no genuine issue of material fact that Hope did not violate the FLSA, and Hope is entitled to summary judgment on Edades's claim for overtime compensation.

**C.   Hope's Termination of Edades Was Not Retaliatory.**

   1.   <u>Edades Cannot Make Out a Prima Facie Case for Retaliation</u>.

Edades does not dispute that Hope would be entitled to summary judgment if Edades's complaints regarding the performance of day habilitation services were based on his mistaken understanding of the way such services were funded through Hope, as he has claimed since the commencement of this case. Instead, for the very first time in opposition to Hope's summary judgment motion, Edades argues that the real reason he refused to perform rehabilitation services to his clients was not that he believed it was not his job, but that he was concerned for his safety and the safety of his clients.[4] However, Edades provides no evidence to support this novel claim other than the inadmissible hearsay statements made without foundation in the affidavit of Domie Edades. Further, Edades's claim that his complaints were due to his belief that it was dangerous for him to drive a vehicle and watch both of his clients at the same time is disingenuous, considering

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 7 of 13
94744v1  23564-60

the fact that day habilitation services are provided by Hope on a one-on-one basis only. Affidavit of Kathy Proulx-Hendrickson ("Proulx-Hendrickson Aff.") attached hereto, at ¶ 5. Because Edades was not engaged in a protected activity, his claim for retaliation must fail.[5]

More importantly, Edades makes no claim that he ever explained <u>to Hope</u> that he had safety-related concerns regarding the provision of day habilitation services, and Hope is not aware of any such claim made by Edades. Proulx-Hendrickson Aff. at ¶ 5. Absent any evidence that <u>Hope was aware</u> that Edades's complaints were safety-related, there can be no retaliation. *Raad v. Alaska State Commission for Human Rights*, 86 P.3d 899, 909-910 (Alaska 2004) (plaintiff could not make out prima facie case of retaliation for refusal to hire where plaintiff could not show that hiring decisionmaker was aware of plaintiff's human rights complaint against employer). Because there is no evidence that Edades ever voiced his so-called "safety concerns" to anyone at Hope, Edades cannot show the existence of a causal connection between his termination and any protected activity.

Hope is entitled to judgment as a matter of law on Edades's retaliation claim because Edades has failed to make out even a prima facie case of retaliation by showing

---

[4] Edades's Complaint, Initial Disclosures, and deposition testimony are entirely devoid of any allegation that safety concerns were a basis for his refusal to perform habilitation services. Complaint ¶ 16; Initial Disclosures filed November 29, 2005, at p.5-6.
[5] Edades's puzzling citation of *Lytle v. Clark County School District*, 382 F.3d 978 (9th Cir. 2004) does not change this result – Edades does not allege that he was engaged in any public discourse and has made no First Amendment claim against Hope. Further, it is unclear how an unauthenticated article from the Alaska Employment Law Letter supports the claim Edades attempts to make.

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 8 of 13
94744v1  23564-60

that he was engaged in a protected activity or that Hope was aware of Edades' involvement in any such activity.

2. <u>Edades Cannot Show that Hope's Reasons for Terminating Edades Were Pretextual</u>.

Even if Edades could make out a prima facie retaliation case, Hope would still be entitled to summary judgment because Edades cannot show that Hope's proffered reasons for his termination were pretextual. In order to show pretext, Edades must not only show that the reasons Hope gave for his termination were untrue, but that the real reason for his termination was unlawful retaliation. *VECO v. Rosebrock*, 970 P.2d 906, 919-20 (Alaska 1999). However, Edades cannot even satisfy the first part of this requirement: he has presented no admissible evidence that the reasons Hope gave for his termination were untrue. As explained fully in Section A of this memorandum, the statements in the Affidavit of Domie Edades regarding these issues fail to set forth a foundation for Domie's personal knowledge of the facts alleged, are based on hearsay, and therefore cannot be considered by the court on this motion for summary judgment.

i. **Leaving a Client With an Unauthorized Person.**

The only admissible evidence in this case is that Edades was permitted to leave his clients in the care of his wife, Domie Edades, only in the event of an emergency "where the provision of emergency services is paramount." Proulx-Hendrickson Aff. at ¶¶ 2-4. There is no evidence of any emergency involved in Edades's decision to leave the home to purchase soda for a client. Because there is no genuine issue of material fact that

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 9 of 13
94744v1 23564-60

Edades violated Hope policy in leaving his clients in the care of his wife, there is no basis to argue that this cited reason for Edades's termination was pretextual.

### ii. Rodent Feces.

Interestingly, Edades doesn't deny that there was rodent feces in the home. Instead, he claims that he told his supervisor about the infestation, and that it was his supervisor's responsibility to deal with the rodents. However, while the extermination of the rodents may very well have been someone else's job, there is no dispute that it was Edades's job to assure that the home was appropriately maintained and cleaned. *See* Proulx-Hendrickson Affidavit attached to Motion for Summary Judgment at ¶ 2 and p.1 of Exhibit A thereto. Edades cannot reasonably argue that leaving rodent waste throughout the house satisfies "appropriate" standards of cleanliness.

### iii. Improper Medication Handling.

Once again, Edades has set forth no admissible evidence to bolster his claim that the improper handling of medication was pretext. Further, Edades misconstrues the nature of this basis for his termination. Edades's failure to store the medication in a locked cabinet was not at issue in Edades's termination; instead, the focus was on his failure to properly *dispense* those medications. As provided in the Continuing Disciplinary Action Record supporting Edades's termination, Edades failed to report medication errors, failed to submit incident reports for those errors, and initially refused to admit that the errors occurred. He then admitted that medications had been missed and they were placed in a plastic pouch. *See* Proulx-Hendrickson Affidavit attached to

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 10 of 13
94744v1  23564-60

Motion for Summary Judgment at ¶ 4 and p.1 of Exhibit C thereto. Edades does not argue that failing to properly dispense medication or appropriately document missed medications is not a legitimate basis for termination.

### iv. Annual Evaluations.

Prior positive evaluations do not establish that an employee's performance was satisfactory at the time of termination, or that the employer did not sincerely believe the reasons given for the termination. *Temple v. Auto Banc of Kansas, Inc.*, 76 F.Supp.2d 1124, 1133 (D.Kan 1999). Further, the evaluations attached to Edades's opposition memorandum are unauthenticated and cannot be considered. Even assuming the authenticity of those evaluations, however, it is clear that Edades suffered performance deficiencies from the very beginning of his employment with Hope. The following excerpts are from the annual evaluations attached to Edades's opposition memorandum:

- 1/24/00 Evaluation: "David has exhibited inappropriate communications with fellow employees on at least one occasion."

- 4/15/01 Evaluation: "He has responded inappropriately to redirection by supervisors on a couple of occasions[.] . . . He should improve versatility and willingness to escort individuals outside of the home. ... He could increase his job performance by participating to a greater degree with individuals exploring their community. ... conflicts with supervisors generally focus on issues of over-time approval."

- 3/4/02 Evaluation: "There have been a few circumstances in the past where David has risen his voice with his supervisor when he had not agreed with a policy. ... There has been times when more detail has been needed when explaining the reasons staff worked overtime in the home. ... David needs to become more participatory with taking individuals out into the community."

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 11 of 13
94744v1 23564-60

- 4/7/04 Evaluation: "David needs to be more proactive in the planning of creative activities and participation of inclusion with the gentlemen he supports. ... David needs to work on his communication skills when conversing with staff supervisor and care coordinator. ... David can improve on his documentation and submission of incident reports. ... David needs to pay closer attention to the medication sheet and compare it to the meds before dispensing."

There is ample history in Edades' prior annual evaluations to support the reasons given for his eventual termination. Because Edades has set forth no admissible evidence to counter Hope's legitimate, non-retaliatory reasons for Edades's termination, there is no genuine issue of material fact that Hope's reasons were not pretextual, and Hope is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Hope respectfully requests that the court grant its motion for summary judgment in its entirety.

DATED this 9th day of August, 2006.

DAVIS WRIGHT TREMAINE LLP
Attorneys for Hope Community Resources, Inc.

By:   /s/ James H. Juliussen
      701 W 8th Avenue, Suite 800
      Anchorage, Alaska 99501
      Phone: (907) 257-5300
      Fax: (907) 257-5399
      jimjuliussen@dwt.com
      ABA: 9211082

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 12 of 13
94744v1  23564-60

Certificate of Service

I certify that on the 9th day of August, 2006, a true and correct copy of the foregoing document was served electronically on the following:

    Joseph P. Josephson

    /s/ Kris Hamann

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 13 of 13
94744v1  23564-60