**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| **DAVID EDADES,**<br><br>                              **Plaintiff,**<br><br>     vs.<br><br>**HCR, INC., doing business as HOPE COMMUNITY RESOURCES, and HOPE COTTAGES,**<br><br>                              **Defendant.** | **Case No. 3:05-cv-00230 TMB**<br><br>**ORDER** |

**I.      Motion Presented**

Plaintiff David Edades brings this action to recover overtime compensation under the Fair Labor Standards Act ("FLSA") for time when he alleges he was required to be on call and was not compensated. Plaintiff also alleges wrongful termination in violation of the covenant of good faith and fair dealing under Alaska law. Defendant Hope Community Resources, Inc. ("Hope") moves for summary judgment. The parties did not request oral argument on the motion, and the Court does not deem oral argument necessary in order to resolve the issues. For the following reasons, Hope's motion at Docket 15 for summary judgment on Edades's FLSA claim is hereby DENIED, and its motion at Docket 15 for summary judgment on Edades's wrongful termination claim is hereby GRANTED.

**II.     Standard of Review**

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law.[1] The moving party has the burden of showing that there is no genuine issue of material fact.[2] When a motion for summary judgment is properly supported, "an

---

[1]    FED R. CIV. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

[2]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

1

adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."[3]  There is no genuine issue of material fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[4]

## III.  Discussion

### A. FLSA Claim

#### 1.  Background

Edades was employed by Hope from 1999 to September 2004 as a Home Alliance Coordinator ("HAC").  According to the HAC job description, HACs must have the "[a]bility to live in house and provide ongoing support 24-hours per day as needed with usual schedule of 16 hours work and 8 hours of sleep per day."  Edades acknowledged in his deposition that he received a copy of the personnel manual explaining this schedule and agreed that he would abide by the policies contained in the manual.  The manual provided that if an employee did not get at least five hours of sleep during the scheduled sleep period, then the entire sleep period would count as time worked.  The employee was to report any sleep disturbance to supervisors.  Edades stated that every time he had interrupted sleep, he reported it to supervisors and filled out an incident report.  He also admitted that every time he reported that he worked more than 16 hours, he was compensated for the additional time.

#### 2.  Discussion

Hope moves for summary judgment, arguing that Edades's FLSA claim fails as a matter of law because Edades was subject to a valid sleep time arrangement and it is undisputed that he was paid for all hours worked pursuant to that agreement.  Edades opposes, arguing that, since there was no express or implied agreement between the parties excluding sleeping time, exclusion of sleep time was improper.  But under Ninth Circuit law, neither argument is persuasive.

---

[3]  FED R. CIV. P. 56(e).

[4]  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Edades claims that there was no agreement between the parties because the sleep time policy was neither a negotiated collective bargaining agreement or a bilateral agreement between the employer and employee. Edades argues that any sleep time arrangement was a unilateral decision by the employer and is therefore unenforceable. But as the Ninth Circuit noted in *Brigham v. Eugene Water & Electric Board*, "[o]ur caselaw clearly recognizes that an agreement cognizable for purposes of the FLSA overtime inquiry may arise by conduct."[5] And in *Berry v. County of Sonoma*, the Ninth Circuit explained that "[a] constructive agreement may arise if employees have been informed of the overtime compensation policy and continue to work under the disclosed terms of the policy" and "an express agreement is created if the employees voluntarily accept the terms of the policy by becoming employed after an overtime compensation policy has been implemented."[6] It is undisputed that when Edades began his employment with Hope, he was aware of the challenged sleep time policy and continued his employment with Hope from 1999 until his termination in 2004. Therefore, whether viewed as a constructive or express agreement, an agreement between the parties existed.

But the inquiry does not end there. The Supreme Court has acknowledged the difficulty of determining whether waiting time is compensable, and has articulated a comprehensive approach to resolving the issue, explaining:

> that no principle of law found either in the statute or in Court decisions precludes waiting time from also being working time. We have not attempted to, and we cannot, lay down a legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time. Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court. This involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances.[7]

---

[5]   357 F.3d 931, 938 (9th Cir. 2004).

[6]   30 F.3d 1174, 1180 (9th Cir. 1994).

[7]   *Skidmore v. Swift & Co.*, 323 U.S. 134, 136-137 (1944)(internal citation omitted).

The applicable regulation at 29 C.F.R. § 785.23 further recognizes the difficulty of the assessment, explaining that:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.

Relying on 29 C.F.R. § 785.23, Hope essentially argues that, since an agreement existed, and Edades acknowledges that he was paid under that agreement, it is entitled to summary judgment. But in cases such as this "addressing whether on-call waiting time is compensable, agreements, although a predominant factor to be considered, are not dispositive."[8] In the Ninth Circuit courts consider both: "(1) the degree to which the employee is free to engage in personal activities; and (2) the agreements between the parties.'"[9]

In *Owens v. Local No. 169, Association of Western Pulp and Paper Workers*, the Ninth Circuit set forth an illustrative, though not exhaustive, list of factors for courts to consider when determining whether employees can engage in personal activities when they are on call, including:

> (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time.[10]

---

[8]     *Berry*, 30 F.3d at 1180 n.5.

[9]     *Brigham,* 357 F.3d at 936 (quoting *Berry*, 30 F.3d at 1180).

[10]     971 F.2d 347, 351 (9th Cir. 1992).

The court noted that no one factor is dispositive.[11]  Since the parties do not even address the *Owens* factors in their briefing, it would be impossible for the Court to undertake the requisite first-step of the analysis.

Furthermore, the Ninth Circuit has emphasized that "the parties' agreement should be accepted only if it is 'reasonable' in light of the 'pertinent facts.'"[12]  And in considering whether or not an agreement is reasonable, the court noted that "the *Owens* factors provide a worthy lens through which to gauge the reasonableness of the parties' mutual assessment of the work equivalence of the time spent by the employees on duty shifts in their on-premises homes."[13]  Summary judgment is therefore inappropriate for the additional reason that there is insufficient information in the record for the Court to assess the reasonableness of the agreement, the second step of the analysis.

The Court does not conclude that summary judgment would never be an appropriate vehicle for resolving the issues raised by this case.  However, by failing to address the factors set forth by the Ninth Circuit in *Brigham*, Hope has not met its burden of showing that it is entitled to judgment as a matter of law.  Its motion for summary judgment on Edades's FLSA claim is therefore DENIED.

    **B.**    **Wrongful Termination Claim**

    **1.**    **Background**

---

[11]    *Id.*

[12]    *Brigham*, 357 F.3d at 941 (*citing* 29 C.F.R. § 785.23).

[13]    *Id.* at 941.

Edades alleges that he was wrongfully terminated in violation of the implied covenant of good faith and fair dealing under Alaska law. He alleges that the reasons Hope provided for terminating him were pretextual, and Hope's real motive for terminating him was that Edades complained when he was asked to drive clients to non-medical appointments away from the home, even though Hope was representing for billing purposes that these tasks were being performed by employees holding a position different from Edades's.

The job description of a Home Alliance Coordinator states that the duties of an HAC encompass implementing support services including "activities of daily living, day habilitation, employment, inclusionary activities, and active learning." The description also states that the HAC "[c]oordinates transportation to meet individuals' needs including, but not limited to, public transportation, back up van driving duties, and accompanying individuals to work, activities, etc."

According to the affidavit of Kathy Proulx-Hendrickson, Hope's Deputy Director of Human Resources and Risk Management, Edades complained on a number of occasions that transporting clients was not part of his job, and that those services should have been performed by a day habilitation specialist. Ms. Proulx-Hendrickson explains that Hope at one time had a separate department for day habilitation services, but this practice was discontinued. Hope explained the change to Edades and informed him that providing day habilitation services was a part of his job.

For what Hope claims were unrelated reasons, Edades was placed on a 30-day employee work improvement program on August 16, 2004. The employee work improvement program states that Edades needed to improve in the areas of cleanliness of the house and communication skills. The form notes that "[a]t any time during the Work Improvement Program when performance

6

progress is judged not to be adequate, additional disciplinary action up to and including termination may be taken with the approval of the Executive Director."

On September 2, 2004, Edades was terminated. An employee continuing disciplinary action record notes four reasons for his termination. The first is that Edades left the home and an individual he was supposed to be supervising with someone not authorized to work in the home or scheduled to work there. It reports that Edades was informed that he was being placed on suspension two days later. Another reported reason for termination is that Edades yelled at the supervisor and refused to leave the home following his suspension. The third and fourth reasons for termination are listed as medication errors and rodent feces found in the drawers of the house.

**2.    Discussion**

Under Alaska law, retaliatory discharge can create a claim for breach of the covenant of good faith and fair dealing implied in at-will employment contracts.[14] In order to succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must demonstrate that (1) he was engaged in protected activity, (2) his employer subjected him to adverse employment action, and (3) there is a causal connection between his protected activity and the employer's action.[15] The Alaska Supreme Court has explained that, in the summary judgment context:

> If the employer claims that no prima facie case can be made, it must offer evidence showing that the employee had not engaged in protected activity, or that the activity was not a motivating factor in her termination, or that she would in any case have been terminated for other reasons. If the employer claims that the employee's discharge was not motivated by her protected conduct or that, assuming that it was so motivated, she would have been discharged in any event for other reasons, the employer must present admissible evidence establishing either or both of these claims. The employer must show there is no real dispute

---

[14]     *Lincoln v. Interior Reg'l Hous. Auth.*, 30 P.3d 582, 586 (Alaska 2001).

[15]     *Id.*

as to any of the critical issues. If the employer satisfies these obligations, it is entitled to summary judgment unless the employee presents or points to evidence that shows that one or more critical issues of fact are reasonably disputed.[16]

Hope argues that Edades cannot establish that he was engaged in a protected activity and therefore cannot make a prima facie case.  For support, Hope presents the deposition testimony of Edades, in which he explains that he did not think that he should be required to perform day habilitation services because it was not in his job description and he believed that funding for day habilitation services was provided through a different source.  But the job description of an HAC states that the duties of an HAC include day habilitation services.  The description also states that an HAC "[c]oordinates transportation to meet individuals' needs including, but not limited to, public transportation, back up van driving duties, and accompanying individuals to work, activities, etc."  And Ms. Proulx-Hendrickson explains in her affidavit that Edades's beliefs about funding were unfounded.  The Court therefore concludes that Hope has provided sufficient evidence that Edades was not engaged in a protected activity.

In opposition, Edades includes the affidavit of his wife, Domie, to establish that Edades's complaints about performing day habilitation services were rooted in safety concerns.  But as Hope points out, Domie Edades's statements are inadmissible hearsay.  And while Edades included excerpts of his own deposition relating to other topics in his opposition, there is no indication from his own testimony that safety concerns motivated his complaints about providing day habilitation services. Edades's opposition accordingly fails to persuade the Court that Edades was in fact engaged in a protected activity.

---

[16]    *Id.* at 587.

Hope also argues that, even if Edades could establish that he was concerned about the safety of performing day habilitation services, he has presented no evidence that Hope was aware that he was concerned about safety. Consequently, he can establish no causal connection between a protected activity and his termination. The Court agrees. Even if the affidavit of Domie Edades contained admissible testimony, it establishes only that Edades informed his wife that he was concerned about safety. It does not establish that Hope was ever informed about Edades's concerns or took any action because of such concerns.[17]

Finally, Hope argues that, even if Edades could make out a prima facie case of retaliation, Hope would still be entitled to summary judgment because Edades cannot show that Hope's proffered reasons for terminating him were pretextual. The Alaska Supreme Court has explained that:

> Once a prima facie case is established, the burden of production shifts to the employer to articulate a legitimate nonretaliatory explanation for the discharge. To satisfy this burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. If the employer meets its burden of production by articulating a legitimate reason for terminating the employee, then the burden shifts once again to the plaintiff to show that the defendant's proffered explanation is merely a pretext for discrimination.[18]

Since the Court concludes that Edades could not establish a prima facie case of retaliatory discharge, it is not necessary to determine whether Hope has articulated a legitimate nonretaliatory

---

[17] While Edades's complaint mentions overtime issues as a reason why he was terminated, Edades appears to have abandoned this allegation, and claims in his opposition brief that he "was retaliated against because of his complaints about the transportation of his clients, which had their genesis in safety concerns."

[18] *Kinzel v. Discovery Drilling, Inc.*, 93 P.3d 427, 433 (Alaska 2004)(quotation marks and citations omitted).

explanation for the discharge. Hope's motion for summary judgment on the wrongful termination claim is granted.

**V.     Conclusion**

Because the Court does not have sufficient factual information to determine whether summary judgment is appropriate under the applicable Ninth Circuit standards, Hope's motion for summary judgment on the FLSA is hereby DENIED. Because Hope has presented sufficient evidence to establish that Edades was not engaged in a protected activity, Hope's motion for summary judgment on Edades's claim for wrongful termination in violation of the covenant of good faith and fair dealing is hereby GRANTED.

Dated at Anchorage, Alaska, this 28th day of March, 2007.

/s/ Timothy Burgess

Timothy M. Burgess
United States District Judge